LAMAR, Justice,
for the Court:
¶ 1. Marshall Keith Watkins was convicted of possession with intent to distribute five separate controlled substances and simple possession of one controlled substance. Watkins now appeals his conviction, arguing the trial court erred by: 1) refusing to dismiss Counts Two through Six of his indictment based on double jeopardy; 2) granting several jury instructions submitted by the State on the morning of closing arguments; 3) permitting a jury instruction based upon constructive possession; and 4) excluding evidence related to the disposition of the two other individuals indicted with Watkins. Watkins also argues the cumulative effect of the alleged errors deprived him of a fair trial, and asks this Court to reverse his conviction. We find all of Watkins’s assigned errors are without merit and affirm Watkins’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. Sometime before January of 2009, Crimestoppers began receiving tips of illegal narcotic activity at 311 Willow Bay Drive in Byram, Mississippi, which was the home of Marshall Keith Watkins. On January 5, 2009, the Hinds County Sheriffs Office executed a search warrant for Watkins’s home. The officers found Watkins, his cousin Derrick Horn, and Elizabeth Bridges in the house; all three were detained. Watkins was searched, and officers found, among other things, a small satchel containing two bags of crystal methamphetamine on Watkins’s person.
*630 ¶ 3. Upon searching the house, officers discovered a locked safe in the master bedroom closet. Watkins provided the combination to unlock the safe. The safe contained a large amount of pills (a total of 1,839 and a half pills), two small notebooks apparently used as drug-sale ledgers, hand-held and digital scales, a pill crusher, baggies, and a syringe containing a liquid substance. The pills were identified by the Mississippi Crime Laboratory to be oxycodone, morphine, hydrocodone, hydro-morphone, oxymorphone, and meperidine; the syringe was proven to contain liquid methamphetamine.
¶ 4. A Hinds County grand jury jointly indicted Watkins, Horn, and Bridges for six separate violations of Mississippi Code Section 41-29-139, specifically for possession of six Schedule II narcotics with intent to distribute.[1] The six charges were based upon the following substances: Count One: 1,209 dosage units of oxyco-done; Count Two: more than one but less than two grams of methylenedioxymeth-amphetamine; Count Three: more than twenty but less than forty dosage units of morphine; Count Four: more than forty dosage units of hydrocodone; Count Five: more than two but less than ten dosage units of hydromorphone; Count Six: more than two but less than ten dosage units of oxymorphone.[2] The charges against Horn and Bridges were ultimately nolle prossed.
¶ 5. Watkins was tried before a jury in the Circuit Court of Hinds County. At the onset of trial, the court considered motions by each side. Watkins moved to have Counts Two through Six dismissed based upon the prohibition against double jeopardy, arguing that, because the various drugs found in his house were all controlled substances and Section 41-29-139 does not differentiate between types of controlled substances, he should be charged with only one crime — possession of a controlled substance with intent to distribute — not a separate crime for each substance that was found in the house. Watkins’s motion was denied. The State moved to exclude any testimony related to the disposition of the indictments against Horn and Bridges. Watkins opposed this motion, arguing that he should be allowed to show that the State chose not to pursue Horn and Bridges because his theory of defense was that the drugs were in the possession of Horn. The State’s motion was granted.
¶ 6. During trial, Watkins took the stand in his own defense. Watkins testified at length that he did not have possession of the drugs found in the safe and had no knowledge that any drugs were in the safe. Specifically, Watkins testified that his cousin, Horn, had been kicked out of his home and had lived with him for several weeks before the search; he had no knowledge that the ledgers were related to the sale of drugs; he had not opened the safe since before Horn had moved in; he had no knowledge that pills were in the safe; the pills and ledgers belonged to Horn; and, although he had received drugs from Horn for “recreational purposes,” he had no knowledge that Horn was selling drugs or had any drugs other than enough for the two of them.
¶ 7. After the parties rested and the jury was excused, the parties and the trial court *631 discussed jury instructions. After the court had ruled on the majority of the instructions, the trial judge asked both parties whether they had any additional jury instructions to submit; both parties stated they did not. The next morning, before closing arguments were to begin, the State submitted several new jury instructions, including S-24 through S-29, which related to the lesser offense of simple possession. Watkins moved to have the new instructions rejected on the ground that they were untimely and further argued he would be prejudiced if the instructions were allowed, because they forced him to change his theory of defense, and his attorneys already had formulated their closing argument based upon the jury instructions determined the day before. The trial court allowed Watkins’s attorneys time to review the instructions and make additional objections, but ultimately allowed Instructions S-24 through S-29. However, the trial court granted Watkins’s attorneys additional time to review the new instructions and to reconsider their closing argument.
¶ 8. Watkins was convicted of possession with intent to distribute on Count One and Counts Three through Six (based on the large number of pills found in the safe) and simple possession on Count Two (based on the small amount of crystal meth found in his pocket). After sentencing, Watkins filed a post-trial motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial, which was denied. Watkins perfected this appeal.
¶ 9. Watkins now asks this Court to find the trial court erred: in denying his motion to dismiss Counts Two through Six of the indictment based upon double jeopardy; in allowing the State’s untimely submitted Instructions S-24 through S-29 regarding the lesser offense of possession; in allowing Instruction S-13 regarding constructive possession; and in excluding evidence related to the disposition of the charges against Horn and Bridges. Watkins also asks this Court to find that the cumulative effect of his assigned errors denied him a fair trial and to reverse his conviction. We find no merit in any error assigned on appeal and affirm Watkins’s conviction and sentence.
DISCUSSION
I. THE INDICTMENT DID NOT VIOLATE THE PROHIBITION AGAINST DOUBLE JEOPARDY.
A. Standard of Review
¶ 10. The Court applies a de novo standard of review to claims of double jeopardy.[3]
B. Legal Analysis
¶ 11. Watkins argues that his right to protection against double jeopardy was violated because he was subject to multiple punishments for the same offense. Specifically, he argues that Section 41-29-139 provides only that it is unlawful to possess and intend to distribute any controlled substance and does not make distinctions based upon the type of controlled substance. According to Watkins, as each charge required that the State prove he possessed and intended to distribute a controlled substance, all six charges contained the same elements and should have been considered one offense; therefore, he contends he should have been charged with only one violation of Section 41-29-139.
¶ 12. The Fifth Amendment to the Constitution of the United States provides that no person shall be “subject for the same offence to be twice put in jeopardy of *632 life or limb.[4] We have recognized that the Supreme Court of the United States has held double-jeopardy protection applies in three situations: “(1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) protection from multiple punishments for the same offense.” [5] We also have recognized that the Supreme Court set out a “same-elements” test to determine whether double jeopardy applies.[6] As we explained in Graves, “[t]he Blockburger [v. U.S., 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] test instructs us to determine whether each offense contains an element not present in the other; if not, they are labeled the same offense for double jeopardy purposes, and successive prosecutions and/or punishments are constitutionally barred.”[7] Further, “the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.”[8]
¶ 13. Mississippi Code Section 41-29-139 provides, in pertinent part:
(a) Except as authorized by this article, it is unlawful for any person to knowingly or intentionally:
(1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance; or
[[Image here]]
(b) Except as otherwise provided in subsections (f) and (g) of this section or in Section 41-29-142, any person who violates subsection (a) of this section shall be sentenced as follows:
(1) In the case of controlled substances classified in Schedule I or II, as set in Sections 41-29-113 and 41-29-115, ... such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less than Five Thousand Dollars ($5,000) nor more than One Million Dollars ($1,000,000) or both;.... [9]
To obtain a guilty verdict on each count, the State was required to prove beyond a reasonable doubt that each of the six substances found in Watkins’s house was in fact a controlled substance under Section 41-29-139, and that Watkins had possessed and intended to sell each drug.[10] Therefore, each count required proof of a separate element — the identity of the controlled substance Watkins was alleged to have possessed and intended to distribute.
¶ 14. Additionally, Mississippi courts consistently have treated possession of more than one controlled substance as *633 multiple violations of Section 41-29-139 and separate offenses.[11] Watkins cites no case, and we are not aware of any case, in which a Mississippi court has held that a person may be charged with only one violation of Section 41-29-139, no matter how many separate controlled substances the person possessed and intended to distribute.
¶ 15. We find that Watkins’s right to be protected against double jeopardy was not violated by Counts Two through Six of the indictment. Although Section 41-29-139 generally prohibits possession of a controlled substance with the intent to distribute, the State must prove the identity of each controlled substance a defendant is charged with possessing in order for a defendant to be convicted; thus, each charge requires proof of a different element. This assignment of error is without merit.
II. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING THE STATE’S UNTIMELY JURY INSTRUCTIONS S-24 THROUGH S-29 IN THE ABSENCE OF PREJUDICE TO WATKINS.
A. Standard of Review
¶ 16. “Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion.”[12] “The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context.”[13] “When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found.”[14]
B. Legal Analysis
¶ 17. Watkins argues that the circuit court erred in allowing several jury instructions submitted by the State on the morning of closing arguments (Instruction S-24 through S-29), which instructed the jury on the lesser-included offenses of possession. Specifically, Watkins argues that Uniform Rule of Circuit and County Court 3.07 requires that all jury instructions be pre-filed “at least twenty-four hours prior to trial” and that “the court will not entertain a request for additional instructions or instructions which have not been pre-filed.” [15] However, Mississippi law is clear that, absent prejudice to the defendant, allowing an untimely filed jury instruction *634 is harmless error.[16]
¶ 18. In Carter v. State, we considered whether it was reversible error for the trial court to allow the State’s jury instructions that were not pre-filed twenty-four hours before trial in accordance with the rules.[17] We found that allowing untimely filed jury instructions was not reversible error, explaining:
The crux of the argument is that the state did not prefile its jury instructions in accordance with Miss. Uniform Crim. R. Of Cir. Ct. Prac.R. 5.03 (1979) and that therefore he was denied adequate time within which to review the instructions and make objections to them. The record does show that well thought out objections were made by the defense counsel to the instructions which the state presented to the court. Perusal of the record does not reveal any showing that the defendant was prejudiced or harmed by the failure of the state to prefile its instructions. There being no indication from the record as to how or in what manner the defendant was prejudiced, the trial judge’s failure to require prefiling of the instructions does not constitute reversible error. Gray v. State, 387 So.2d 101 (Miss.1980); Ferrill v. State, 267 So.2d 813 (Miss.1972).[18]
¶ 19. In this case, Watkins objected to the untimely instructions when they were submitted the morning of closing arguments, and his attorneys were given time to review the instructions before the circuit court considered Watkins’s objections. After considering the objections, the circuit court concluded that the rules and Mississippi caselaw would allow the jury instructions to be given in the absence of prejudice to the defendant, even though they were untimely filed. The circuit court specifically asked Watkins’s counsel how his defense would be prejudiced if the instructions were allowed. Watkins’s attorneys responded that they already had prepared their closing argument, that the new jury instructions possibly would have changed Watkins’s theory of defense, and that he might have called different witnesses at trial.
¶ 20. The circuit court found the instructions related to the lesser offenses of simple possession would not unfairly prejudice Watkins because the State still had the burden to prove possession, even if the jury was allowed to find Watkins guilty of possession or possession with intent to sell. Therefore, the circuit court determined that Watkins had not shown any prejudice that would obligate the court to reject the untimely jury instructions, but did allow Watkins’s attorneys additional time to reconsider their closing argument.
¶ 21. Although the jury instructions were untimely filed under Rule 3.07, we find that Watkins did not show the circuit court specifically how he would be prejudiced if the instructions were allowed. Further, the circuit court granted Watkins’s attorneys additional time to reconsider their closing argument in light of Instruction S-24 through S-29, and Watkins has not shown how he was unfairly prejudiced by the circuit court’s decision to allow the late-filed jury instructions. Therefore, we find Instructions S-24 through S-29 did not result in prejudice to *635 Watkins and that the circuit court did not abuse its discretion in allowing Instructions S-24 through S-29. This assignment of error is without merit.
III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING JURY INSTRUCTION S-13 REGARDING CONSTRUCTIVE POSSESSION.
A. Standard of Review
¶ 22. “Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion.” [19] “The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context.”[20] “When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found.”[21]
B. Legal Analysis
¶ 23. Watkins argues that the circuit court abused its discretion by permitting Instruction S-13, which read as follows:
Possession, as that term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object, either directly or through another person.
Watkins argues that “the state provided no evidence that Mr. Watkins has exclusive dominion over the house,” and that there was not an “adequate evidentiary basis” for Instruction S-13.
¶ 24. This Court has explained the concept of constructive possession in a controlled-substance case. In Curry v. State, 249 So.2d 414 (Miss.1971), defendant was charged and convicted of possession of marijuana found under the dashboard and under the accelerator of his car. Police officers found the drugs after pulling the car over; however, the car was being driven by another person while the defendant and two other occupants were passengers.[22] The defendant appealed, arguing in part that there was not sufficient evidence to show he possessed the drugs.[23] We explained:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of ‘possession’ is a question that is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.[24]
Curry does not require that a defendant have exclusive dominion or control over an *636 area where controlled substances were found for constructive possession to be shown, nor are we aware of any Mississippi cases that have so held. Indeed, we ultimately held in Curry that there were enough “incriminating circumstances” to support the jury’s finding that the defendant was in possession of the marijuana. Those circumstances found in Curry included the fact that the defendant was a front-seat passenger sitting in close proximity to where the drugs were found and the fact that the defendant made a suspicious downward motion when he had realized the car was being pulled over. We affirmed the conviction, even though the drugs were found in the defendant’s car at a time when other passengers were present who arguably could have also exercised control or dominion over the drugs.[25]
¶ 25. We find that the circuit court did not abuse its discretion in allowing Instruction S-13. Watkins testified at trial that the house belonged to him, that the safe was located in his bedroom, and that the safe belonged to him. Watkins also testified that he provided the combination to the police officer so the safe could be opened. Clearly, there was a sufficient evidentiary basis to support a jury’s finding that Watkins was aware of the presence and character of the drugs found in the safe and that the drugs found in the safe were under his dominion and control. As the circuit court recognized, an instruction on constructive possession is appropriate in this factual situation (ie., in which a defendant is charged with possession of drugs found not on his person but in an area over which the defendant exercises control). This assignment of error is without merit.
IV. THE TRIAL COURT DID NOT ERR BY EXCLUDING EVIDENCE RELATED TO THE DISPOSITION OF THE CASES AGAINST DERRICK HORN AND ELIZABETH BRIDGES.
A. Standard of Review
¶ 26. “The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused.”[26]
B. Legal Analysis
¶ 27. Watkins argues that the circuit court abused its discretion by prohibiting him from introducing evidence that the State nolle prossed the cases against Derrick Horn and Elizabeth Bridges, Watkins’s coindictees. Watkins argues that this evidence was necessary for him to prove that the controlled substances found in the safe actually belonged to Derrick Horn.
¶ 28. It is axiomatic that when two or more people are indicted together but tried separately, evidence of the conviction of one is not admissible in the trial of the other to prove guilt.[27] As we have recognized, “the guilt or innocence of co-defendants does not per se bear upon the question of guilt of the person on trial.”[28] Although this situation normally arises when the prosecution seeks to introduce evidence of a coindictee’s conviction to show that the defendant on trial is likewise guilty, the Court of Appeals of Mississippi has held that a defendant may not intro *637 duce evidence at his capital murder trial that his coindictee pleaded guilty to manslaughter to prove that he was guilty only of the lesser offense of manslaughter.[29]
¶ 29. Evidence related to the disposition of a case against one coindictee is not admissible in the trial of another to show guilt or innocence of the party being tried, and the circuit court did not abuse its discretion in excluding such evidence. Although it strains logic to understand how the State’s decision not to prosecute Horn could support Watkins’s claim that the drugs belonged to Horn, Watkins was not prevented from presenting his theory of the case through his own testimony, as he took the stand and testified at length that the drugs belonged to Horn, and that he had no knowledge that any drugs were in the safe. This assignment of error is without merit.
V. AS THERE WERE NO ERRORS BELOW, THERE WAS NO CUMU-LATION OF ERRORS THAT WOULD REQUIRE REVERSAL.
¶ 30. It is well settled that the cumulative effect of errors, which independently would not require reversal, may necessitate reversal in some cases.[30] However, when no error is found as to any individual assignment, there are no errors to cumu-late.[31] As we find that none of Watkins’s assignments of error has merit, there are no errors to cumulate, and this assignment of error also is without merit.
CONCLUSION
¶ 31. We find that Counts Two through Six of Watkins’s indictment did not violate Watkins’s protection against double jeopardy; the trial court did not abuse its discretion in allowing the untimely filed Instructions S-24 through S-29; the trial court did not abuse its discretion in allowing Instruction S-13 on constructive possession; and the trial court did not abuse its discretion in excluding evidence related to the disposition of the cases against Derrick Horn and Elizabeth Bridges. We additionally find that there were no cumulative errors that would necessitate reversal, and we affirm Watkins’s conviction and sentence.
¶ 32. COUNT I: CONVICTION OF POSSESSION OF OXYCODONE WITH INTENT TO DISTRIBUTE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCE OF SIX (6) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT III: CONVICTION OF POSSESSION OF MORPHINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT IV: CONVICTION OF POSSESSION OF HYDROCODONE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT V: CONVICTION OF POSSES *638 SION OF HYDROMORPHONE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT VI: CONVICTION OF POSSESSION OF OXYMORPHONE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCES SHALL RUN CONCURRENTLY TO EACH OTHER. APPELLANT IS CREDITED WITH TIME SERVED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. Section 139 provides in pertinent part: "(a) Except as authorized by this article it is unlawful for any person knowingly or intentionally: (1) To sell, barter, transfer, distribute, dispense or possess with intent to sell, barter, transfer, distribute or dispense, a controlled substance.” Miss.Code Ann. § 41-29-139 (Rev.2009). '

. The indictment was later amended to correct a scrivener's error as to Counts Two, Five, and Six. These counts were based upon possession with intent to distribute methamphetamine, hydromorphone, and oxymor-phone, respectively.

. Boyd v. State, 977 So.2d 329, 334 (Miss.2008) (citing Brown v. State, 731 So.2d 595, 598 (Miss.1999)).

. U.S. Const, amend. V. See also Miss. Const, art. Ill, § 22 (1890) ("[n]o person’s life or liberty shall be twice placed in jeopardy for the same offense, but there must an actual acquittal or conviction on the merits to bar another prosecution”).

. Graves v. State, 969 So.2d 845, 847 (Miss.2007) (citing U.S. v. Dixon, 509 U.S. 688, 695-96, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).

. Id.

. Id.

. Id.

. Miss.Code Ann. § 41-29-139 (Rev.2009).

. See Barnette v. State, 481 So.2d 788, 791 (Miss. 1985) ("an essential element of the crime of selling a controlled substance is that the substance sold is indeed a controlled one within the purviews of Mississippi Code Annotated Section 41-29-139 (Supp.1985)”); Hampton v. State, 860 So.2d 827, 828 (Miss.Ct.App.2003) (recognizing that, in a case involving the sale of controlled substances, the "nature ... of the drug involved is an essential element of the crime that must be alleged *633 in the indictment and proved beyond a reasonable doubt at trial”).

.See Bolin v. State, 489 So.2d 1091 (Miss.1986) (holding prosecutor could not introduce evidence regarding other controlled substances found in defendant’s possession because defendant was charged with possession of only one controlled substance; evidence of “other crimes” would not be allowed); Dixon v. State, 465 So.2d 1092 (Miss.1985) (affirming lower court's decision to allow one trial on five-count indictment based upon defendant’s possession of five controlled substances, even though defendant’s possession of five controlled substances was five separate crimes).

. Bailey v. State, 78 So.3d 308, 315 (Miss.2012) (citing Newell v. State, 49 So.3d 66, 73 (Miss.2010)).

. Id.

. Id.

. Rule 3.07 of the Uniform Circuit and County Court Rules reads in pertinent part as follows: "At least twenty-four hours prior to trial each of the attorneys must number and file the attorney’s jury instructions with the clerk, serving all other attorneys with copies of the instructions. Except for good cause shown, the court will not entertain a request for additional instructions or instructions.”

. Carter v. State, 493 So.2d 327 (Miss.1986); Hill v. State, 929 So.2d 338 (Miss.Ct.App.2005); Clair v. State, 845 So.2d 733, 736 (Miss.Ct.App.2003) (jury instruction filed five minutes before instructions were to be given to jury was not reversible error in absence of prejudice to defendant).

. Carter, 493 So.2d at 330.

. Id. at 330-31 (quoting Greene v. State, 406 So.2d 805 (Miss.1981)).

. Bailey v. State, 78 So.3d at 315 (Miss.2012) (citing Newell, 49 So.3d at 73 (Miss.2010)).

. Id.

. Id.

. Id.

. Id.

. Id. at 416.

. Id.

. Culp v. State, 933 So.2d 264, 274 (Miss.2005) (citing Crawford v. State, 754 So.2d 1211, 1215 (Miss.2000)).

. Johnson v. State, 477 So.2d 196, 214 (Miss.1985).

. White v. State, 616 So.2d 304, 307 (Miss.1993).

. Stewart v. State, 881 So.2d 919, 924-25 (Miss.Ct.App.2004).

. Jenkins v. State, 607 So.2d 1171, 1183-83 (Miss.1992).

. McFee v. State, 511 So.2d 130, 136 (Miss.1987).